JOSEPH BOARD, JR. AND JACOB KANOUSE, Overseers of the Poor of the Township of Pompton, in the County of Bergen, *against* SAMUEL CRONK.

### ON CERTIORARI.

An action will not lie against the overseers of the poor for the maintenance of paupers, but must be brought against the inhabitants of township.

This case involved the same point which was determined in the preceding case of the *Inhabitants of Saddle River* v. *Colfax,* and Justices Rossell and Ford having determined in that case, that the action would not lie against the overseers of the poor, but ought to be brought against the inhabitants of the township, concurred in reversing this judgment.

* See the next case.

*Hornblower,* for plaintiff in *certiorari.*

KIRKPATRICK, C. J.　The state of demand filed in this case is to the following effect, *viz :*

*Joseph Board, Jun., and Jacob Kanouse, Overseers of the Poor of the Township of Pompton.*

*To Samuel Cronk,*　　　　DR.

To keeping two persons (naming them) chargeable
　to the township of Pompton, from June 23, 1818,
　till April 12, 1819, at 12*s.* per week for both..... $61 50·

CR.

For sundries, (stating them).............................. 14 05

$47 45

Interest on balance........................................ 1 88

$49 33·

Upon this state of demand there is a verdict and judgment for the plaintiff for $48,57.5.　And the reason assigned for the reversal of this judgment is, that Cronk's right of action, if any he had, appears by the state of demand itself to be against the inhabitants of the township of Pompton, and not against the overseers of the poor.　But I am inclined to think this reason cannot prevail.

It is admitted by the counsel for the plaintiffs in *certiorari,* that in England, under the 43d of Elizabeth and its supplements, the overseers of the poor are answerable upon their own contracts, and not the parishes; but the reason of this, he says, is, that the parishes there are not incorporated, as our townships here are.　I believe I may venture to affirm, however, without the danger of contradiction, that this is the first time it has ever been discovered that this is the ground of the construction of the 43d of Elizabeth in this respect.

Certain it is, that no case, nor even *dictum*, has been produced from the books which places it upon any such foundation.

I do not, however, lay much stress upon this, because that statute is widely different from ours, and might admit of different constructions. So far, however, as it is analagous, and so far as it has been the foundation of our practice here, the construction of it is against the position assumed by the plaintiffs.

But, what is still more material, it is admitted by the counsel for the plaintiffs, that from the first establishment of our poor laws until the act of February 21, 1798, incorporating the townships, the law was the same here as in England in this respect; that it was so even under the act of the 11th of March, 1774, which is the act still in force, and the act from which, alone, our overseers of the poor derive their authority at this day. I say it is admitted, and, indeed, how could it be otherwise upon the principles assumed, for until that time the townships, not being incorporated, could neither be bound by contract, nor sue, nor be sued in matter of debt. The overseers, therefore, were necessarily responsible themselves, upon their own contracts, else their contracts must have been nugatory and void, a position certainly too absurd to be maintained by any body.

Well, if this was the settled construction of the poor laws, and even of the act now in force, and if this was the uniform practice of the courts upon them, by what authority are we now to introduce a new system? It is true, that the townships have been incorporated, but the act by which they are incorporated says not one single sentence upon this subject. It leaves the poor laws and the powers and authorities, as well as the duties and obligations derived from them, and imposed by them, just where they were before. It is said, that the construction now contended for would be much more convenient, and much more conducive to the public good. But who has authorized us to judge of this matter?

It is true, that in construing a recent statute, ambiguously or obscurely drawn, courts will go a great way to give it that construction which will best effect the manifest intent of the legislature, and be most conducive to the public good and the public convenience; but where a statute has already received its construction, and where the practice under it has been uniform for fifty years and more, and so become the settled law of the land, it would be going a great way for a court to give it a new construction under the pretence of making it better. Now the act of 11th of March, 1774, has long since received its construction. It has been admitted, and, indeed, must necessarily have been admitted, that by that construction the overseers were bound by their own contracts, and not the townships, for the townships could not be bound; and that this was the settled law of the land, at least up till February 21, 1798. Has this construction, then, been altered since that time? Not in this court, I am bold to affirm. And even if some of the townships should be found to have yielded to these contracts, which I very much doubt, it has, I think, been matter of courtesy rather than legal obligation.

In the case of *Gould and Tomkins, overseers, &c.,* v. *Bailey,* (1 *Pen.* 6) the demand was for medicine furnished, and attendance given by Bailey, the plaintiff below, to three paupers of the township of Caldwell, in the county of Essex, by the direction of Tomkins, as one of the overseers of the poor of the said township. And the decision was, that the action ought to have been against Tomkins only, on his individual contract, for that the contract of one overseer does not bind the rest; and, upon this principle, the judgment below was reversed. Not a word was said about the township being liable upon this contract. *The book from New York, containing this doctrine, had not yet been made, or, if made, had not yet been brought here to throw light upon our laws.*

In the case of *Shotwell* v. *Kelly, Everet, and Thornell, overseers, &c.,* (1 *Pen.* 76) the case was this: Kelly, one of

the defendants, had laid out money for the maintenance of a negro man, who was afterwards discovered to belong to the plaintff, Shotwell, and thereupon the overseers brought this action to recover the money so laid out, as money expended for the use of Shotwell. And the decision, so far as respects this case, was, that the money expended was, substantially, the money of the township; that it was lawfully expended by the overseers, or any one of them, no action would lie against them by the township to recover it back from them, and, of course, they could have no action to recover it of Shotwell; but that, as it was in fact the money of the township, and it had been expended for the benefit of Shotwell, *ex equo et bono*, the township ought to recover it back from him, and an action on the case would lie for that purpose; and secondly, that if recoverable by the overseers at all, it must be by Kelly alone, for that Everet and Thornell had no participation in the transaction. It is true, that, in this case, some things were said, as has been alleged in the argument, about the overseers of the poor not being a corporate body; but what has that to do with the question? cannot a man be bound by his contract without being a corporate body?

The truth is, there is nothing in either of those cases which at all countenances the doctrine set up by the plaintiffs, but on the other hand, the decisions, so far as respects the exclusive liability of the township, are directly against them.

But without inquiring much what has been the construction of the 43d of Elizabeth and its supplements, or of our own poor laws, as to this matter, and, indeed, without seeming to think it very material to make such inquiry, recourse is had to some loose *dicta* found in the late compilers, on the subject of *principal and agent*. It is said, the overseer is the agent of the township, and, that when the agent, in his contract, makes known his principal, the principal only is liable, and not the agent. But, even if this should be so,

yet, I apprehend, it is a misapplication of terms to call the township the principal, and the overseer the agent, unless it be in a very special and limited sense. For what is an agent? He is said to be a substitute, a deputy appointed by a principal, with power to do the things which the principal himself might and could lawfully do. And, indeed, it is obvious, that no one can constitute an agent, and empower him to do that which he could not lawfully do himself. Now the inhabitants of a township have no lawful authority to do any one act which it is the duty of the overseer to do. They cannot, by any vote or decision of theirs, determine who shall be received as a pauper, and who not; who shall have relief, and who not. They cannot determine what the relief shall be; how, or where, or at what expense, or in what manner, the pauper shall be maintained; (I speak of the general poor laws) they can raise money, it is true, and they are bound to do so, but, when raised, it goes into the hands of the overseer, they cannot touch a single dollar of it, or direct the manner in which it shall be expended; they can lawfully make no contracts for the maintenance of the poor, and much less can they set them up and sell them to the lowest bidder, as has sometimes been done by overseers, in the very face of all the laws of decency and humanity; the overseer derives no power or authority from the township, they can neither direct or control him in the execution of his duties, these are prescribed by a higher power, they are prescribed by the supreme power of the state. The overseer, therefore, is rather to be considered as the officer of the state, than as the agent of the township. It is true, that he is elected by the inhabitants of the township, at their town meetings, but that does not make him their agent. It is only the mode which the state adopts to appoint those officers, but when appointed, the township has no more control over them than if they were appointed by the joint-meeting, like other officers of the government. Have we ever heard it said, that

because a sheriff is appointed by the inhabitants of the county, that, therefore, he is the agent of the county, and that he could bind them by his contracts?

But, even if the overseer was the agent of the township, it does not follow that he can bind them by his contracts, without special authority so to do. The township raises a certain sum of money to maintain the poor, which by law is paid into the hands of the overseer for that purpose, does it follow, that he can bind them by his contracts, to any amount that he pleases? This would be contrary, I think, to universal experience, and the common understanding of men upon this subject. A county is obliged to repair a certain bridge, the board of freeholders appropriate and raise a certain sum of money for that purpose, and appoint an agent to conduct the work; can that agent make contracts to bind the county beyond that sum? An overseer of the road, where the road is kept in repair by tax, is liable to be fined if the road be ruinous, and even if the township be fined he is liable to return to them the money exacted from them by the fine, and yet, still, he can only spend the money raised by the tax, and put into his hands; he cannot make contracts to bind the township according to his discretion. Indeed, from the highest officer in the government to the lowest, and from the greatest to the smallest concern in private life, the rule is different from that contended for here. The principal appropriates the money for the object in view, the agent expends it, but my mind does not present me a single instance in which he can go beyond it.

The doctrine of principal and agent, then, does not, in my view, apply to the case at all, and even if it did it would not better the plaintiffs, for then the overseer could only spend the money raised and put into his hands.

But we are still pressed with another argument, an argument which generally brings up the rear of a desperate cause. It is said, the townships may refuse to raise money,

and that, by reason thereof, the overseer may be subjected to heavy penalties, the poor may be left to starve, the lame to suffer, and the sick to die, in short, that the whole provision of. the government may' be defeated. The answer to all this is, that the law will never presume that the township will refuse to do its duty, but the contrary; and, by way of strengthening that presumption, we have the experience of, now, an hundred years and more, and no such disasters have ever yet happened, that we have heard of.

I will mention one thing further. If there be an appeal under the poor laws, it is in the name of the overseer, and not of the township; if there be costs or expenses adjudged, it is against the overseer, and not against the township; and if there be an action to recover such costs and expenses, it is against the overseer, and not against the township. All this is by the express provisions of the act. Where, then, is the sole liability of the township in these cases? or, is the township solely liable only where it suits the overseer to shift himself out of the contract? The whole money raised for the maintenance of the poor goes into the hands of the overseer; the township cannot lawfully have a single penny at its disposal for this purpose, and, generally speaking, it has no property upon which a levy can be made. Upon the whole, therefore, in my opinion, the judgment must be affirmed.

Justices ROSSELL and FORD, *contra.* And so the judgment was reversed.